UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANDY GUZMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.: 1:19-cv-0445 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO ENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF MANDY GUZMAN, AND AGAINST DEFENDANT, THE COMMISSIONER OF SOCIAL SECURITY |

Mandy Guzman asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the medical record related to her mental and physical impairments. For the reasons set forth below, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **BACKGROUND**

In June 2015, Plaintiff filed her applications for benefits, alleging she came disabled in July 2014 due to lupus, carpal tunnel syndrome in her right hand, blurred vision, fatigue, bipolar disorder, and depression. (Doc. 10-12 at 2; Doc. 10-15 at 14) The Social Security Administration denied the application at the initial level and upon reconsideration. (*See generally* Doc. 10-12) Plaintiff requested an administrative hearing on the application and testified before an ALJ on February 26, 2018. (*See* Doc. 10-7 at 31, 49) The ALJ determined Plaintiff was not disabled and issued an order denying benefits on April 6, 2018. (*Id.* at 31-41) Plaintiff requested review of the decision with the Appeals

Council, which denied the request on February 14, 2019. (Doc. 10-3 at 2-5) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to this five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the application date of June 11, 2015. (Doc. 10-7 at 33) Second, the ALJ found Plaintiff's severe impairments included: "lupus and lumbar spondylosis without myelopathy or radiculopathy." (*Id.*) The ALJ noted Plaintiff also alleged mental imparments including depression and anxiety, but found these impairments were not severe. (*Id.* at 34) At step three, the ALJ determined Plaintiff's physical impairments did not meet or medically equal a Listing. (*Id.* at 35-36)

Next, the ALJ found: "[T]he claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b)." (Doc. 10-7 at 36) Plaintiff did not have past relevant work for the ALJ to evaluate at step four. (*Id.* at 40) However, with the identified residual functional capacity, the ALJ determined at step five that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.*)

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ erred in evaluating the medical evidence related to the severity of her mental impairments at step two, and should have further developed the record to "obtain an updated opinion of Plaintiff's mental functional capacity." (Doc. 18 at 10, emphasis omitted) In addition, Plaintiff argues the ALJ erred in evaluating her physical impairments by "improperly relying upon an outdated medical opinion and his own lay interpretation of the medical data." (*Id.* at 13, emphasis omitted)

**A.      Step Two and Plaintiff's Mental Impairments**

The inquiry at step two is a *de minimus* screening "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yucket*, 482 U.S. 137, 153-54 (1987)).  The purpose is to identify claimants whose medical impairment makes it unlikely they would be disabled even if age, education, and experience are considered.  *Bowen*, 482 U.S. at 153 (1987).  A claimant must make a "threshold showing" that (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe.  *Id.* at 146-47; *see also* 20 C.F.R. § 404.1520(c).  Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment that significantly limits her physical or mental ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(a).

    1.      Medically determinable impairment

The Ninth Circuit determined that a diagnosis from an acceptable medical source is a prerequisite to a finding that a medically determinable impairment exists, and symptoms by themselves are not sufficient to establish such an impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005-06 (9th Cir. 2005).  The ALJ found Plaintiff had the "medically determinable mental impairments of depressive disorder and meth abuse in remission," and considered Plaintiff's testimony that "she has depression and anxiety." (Doc. 10-7 at 34)

    2.      Severity of Plaintiff's impairments

Having established medically determinable mental impairment, Plaintiff must next show her impairment was severe.  *See Bowen*, 482 U.S. at 153 (1987); 20 C.F.R. § 416.920(c).  The Ninth Circuit determined that "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993).  In other words, a medical diagnosis alone does not make an impairment qualify as "severe."

The ALJ evaluated the severity of Plaintiff's impairments with "the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)." (Doc. 10-7 at 34)  As the ALJ noted, these four areas of functioning—commonly referred to as the "Paragraph B" criteria—include ability the to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain

pace; and adapt or manage oneself. 20 C.F.R., Pt. 404, Subpart P, App. 1 §12.00(A)(2)(b) (2018).  The ALJ found Plaintiff had "no limitations in the four areas," stating:

> The claimant reported that her conditions affect understanding but not memory or following instructions (Ex. 5E). The claimant also reported that her conditions affect completing tasks and concentration.  The claimant did not report difficulty with getting along with others. The claimant reported that she does not require special reminders to take care of personal needs and grooming, however she does forget to take her medication.  The claimant reported that she can only pay attention for five minutes and does not finish what she starts. She also reported that she does not comprehend written instructions but does well with spoken instructions. Notably, the claimant reported that she is able to prepare simple meals, shop in stores, count change, watch television at times, and attend doctor appointments. These activities demonstrate that the claimant is more functional than alleged. Moreover, at her psychological consultative examination, the claimant was noted as performing satisfactorily on a gross indicator of rote learning and memory, attention encoding, and auditory processing by successfully completing forward recall of a digit span (Ex. 5E.) The claimant was able to perform simple mathematics and recall three items after five minutes. The claimant's attention and concentration was also satisfactory as she was able to successfully count by 2s to 20 and back to zero. Moreover, the claimant reported having several friends she was close to and reported that she was able to take care of her personal needs including showering and eating, as well as household chores.
>
> …
>
> The claimant's testimony demonstrates that she is currently prescribed medication for depression by her primary care physician (Hearing Testimony). She is not currently receiving any other treatment for mental health symptoms. Notably, the claimant's depression symptoms has improved with medication and has been noted as stable (e.g., Exs. 10F/7; 17F).

(Doc. 10-7 at 34-35)

In addition, the ALJ noted that she gave "great weight" to the opinion of Dr. Mary Lewis, who performed a consultative examination in September 2015 and "opined that the claimant had no significant impairments based on her psychiatric condition." (Doc. 10-7 at 35)  Similarly, the ALJ stated "great weight" was given to the opinions of Drs. Morgan and Friedland, who reviewed Plaintiff's records in September 2015 and January 2016 and "opined that the claimant's mental impairments are nonsevere." (*Id.*)  The ALJ concluded: "Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas, they are nonsevere (20 CFR 416.920a(d)(1)."   (*Id.* at 34)

Plaintiff contends the ALJ erred in making this determination, "because she based her entire assessment of Plaintiff's mental health impairments upon the medical opinions rendered within the one-year period during which Plaintiff improved and stabilized with medications." (Doc. 18 at 12)

5

According to Plaintiff,

> [T]he ALJ failed to acknowledge that, while Plaintiff's depression was well-controlled with Celexa during their evaluations, Celexa subsequently stopped working. Specifically, Plaintiff was prescribed Celexa for depression in July 2015 (Ar. 1133), and for the following year, her complaints of symptoms were sparse; her depression was stable on Celexa through July 2016. Ar. 1472. However, in November 2016, Plaintiff reported Celexa had stopped working after her July visit, and she was experiencing worsening depression with difficulty functioning. Ar. 1486. She complained of depressed mood, difficulty concentrating, difficulty falling asleep and staying asleep, diminished interest or pleasure, fatigue, loss of appetite, and restlessness. Ar. 1486. She reported Celexa had been ineffective for the past 5 months. Ar. 1486. A patient health questionnaire revealed severe depression, with symptoms occurring nearly every day. Ar. 1486-87. Despite increased doses of medications, Plaintiff again reported difficulty functioning due to depression in January 2017, and she was also referred for behavioral health therapy in addition to medications. Ar. 1506-13. She began psychotherapy in January 2017, Sheri Taylor, LCSW, observed anxious and fidgety behavior. Ar. 1519-21. Her complaints of depression persisted, unrelieved, with depressed mood, difficulty concentrating, poor sleep, fatigue, and loss of interest or pleasure, as document in treatment notes for April 2017 and July 2017. Ar. 1540-47, 1558-63. She was ultimately referred to psychiatry for specialized treatment in October 2017, due to persistent depressive symptoms occurring on a daily basis. Ar. 1574-80.

(Doc. 18 at 12-13)  Plaintiff contends the ALJ erred by failing to "acknowledge this evidence of persistent depression in Plaintiff's treatment records, or discuss that her impairments worsened subsequent to the opinions of the reviewing physicians." (*Id.* at 13)  Thus, Plaintiff asserts the record does not support the ALJ's conclusion that she does not have functional limitations with the Paragraph B domains, and that her impairments are not severe.  (*Id.*)

On the other hand, the Commissioner argues that "[t]he ALJ properly found Plaintiff's mental impairments were non-severe." (Doc. 23 at 8, emphasis omitted)  The Commissioner contends, "While Plaintiff did have mental health treatment by her primary physician, and some counseling, the longitudinal medical record reveals few objective findings, indicating that her condition was controlled with medication." (*Id.*)

Further, the Commissioner notes that "no medical source opined that Plaintiff would have a single functional restriction from her mental impairments." (Doc. 23 at 9)  The Commissioner argues, "the evidence does not corroborate her claim of worsening depression." (*Id.* at 9)  Specifically, the Commissioner asserts:

> Plaintiff alleges that the ALJ overlooked a worsening in her depression beginning after July 2016 (PB at 12). Plaintiff told her physician in November 2016 that her medication, Celexa, was having reduced effectiveness in controlling her symptoms (AR. 1486). Her primary care physician increased her dose of Celexa (AR 1486, 1493).

> Thereafter, in January 2017, Plaintiff denied worsening of her depression symptoms, and identified that she had a good response to her increased dose of Celexa (AR. 1506). On examination, she exhibited appropriate mood and affect (AR 1512). The following week she met with a social worker for an initial psychotherapy appointment. At the appointment she was cooperative, had anxious mood, full affect, logical thought process, normal perception, normal thought content, normal cognition, no delusions, average intelligence, normal insight, and judgment within normal limits (AR 1520). Plaintiff reported that her primary medical doctor referred her over, but she was not sure why (AR 1521). In April 2017, Plaintiff reported no worsening of previously reported symptoms (AR 1540). In July 2017, Plaintiff reported improvement of initial symptoms (AR 1558). On examination, she had appropriate mood and affect and normal insight and judgment (AR 1562). In October 2017, upon examination, she had appropriate mood and affect (AR 1579).
>   In addition, the ALJ cited that a primary care physician prescribed medication for depression (AR 201). Only taking medication her primary care physician prescribed, as opposed to a mental health specialist reasonably indicates that Plaintiff's depression was not as severe as she alleged.

(Doc. 23 at 10-11)

Finally, the Commissioner argues that the ALJ properly considered Plaintiff's activities of daily living—which included meal preparation, shopping, bathing, counting change, watching television, and attending doctor appointments— to determine "Plaintiff was more functional than she alleged." (Doc. 23 at 11, citing, *e.g.,* 20 C.F.R. § 416.929(c)(3)(i) [ALJ may consider a claimant's activities of daily living when evaluating a claimant's alleged symptoms]; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) [claimant's testimony regarding daily domestic activities undermined the persuasiveness of her symptom-related testimony]).

Importantly, when "interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003; *Vincent v. Heckler,* 739 F.2d 1393, 1394-95 (9th Cir. 1984) (an ALJ "need not discuss *all* evidence presented to her") (emphasis in original). The Ninth Circuit explained an "ALJ is not required to discuss evidence that is neither significant nor probative." *Howard,* 341 F.3d at 1012. However, an ALJ must explain why "significant probative evidence has been rejected." *Vincent*, 793 F.2d at 1395 (citation omitted). Thus, if the records identified by Plaintiff that the ALJ did not discuss were significant and probative, Plaintiff will establish that the ALJ erred in reviewing the severity of her mental impairments.

Although Plaintiff contends the ALJ erred by not specifically discussing treatment notes related to her depression, Plaintiff fails to establish the treatment notes were significant, probative evidence.

The records cited by Plaintiff above primarily include her own statements regarding symptoms. For example, Plaintiff notes that in November 20176, she complained of "depressed mood, difficulty concentrating, difficulty falling asleep and staying asleep, diminished interest or pleasure, fatigue, loss of appetite, and restlessness"— which were symptoms addressed by the ALJ in her decision. (*See* Doc. 18 at 12, quoting AR 1486 [Doc. 10-30 at 32]; *see also* Doc. 10-7 at 34, 36-37) Specifically, the ALJ acknowledged Plaintiff's testimony that she had "depression and anxiety;" "her mind [was] always racing;" she suffered from "insomnia due to her racing mind and aches and pains;" and she "reported her conditions affect completing tasks and concentration." (Doc. 10-7 at 34) In addition, the ALJ noted that Plaintiff testified that she "is always tired and has no energy," and "[s]he cannot sit or stand for long periods of time." (*Id.* at 36) Thus, the records identified by Plaintiff concerning her symptoms do not offer information that was not considered by the ALJ.

Plaintiff identifies only a single treatment note that included objective observations, made by Sheri Taylor, LCSW, who "observed anxious and fidgety behavior" in January 2017. (Doc. 18 at 12, citing AR 1519-21 [Doc. 10-31 at 17-19]) Plaintiff fails to acknowledge that despite the behavioral observations, Ms. Taylor also opined that Plaintiff's appearance was "[w]ithin normal limits;" her thought process was logical; and thought content, cognition, insight, and judgment were "[w]ithin normal limits." (Doc. 10-3 at 18) This information from Ms. Taylor is consistent with the findings of Dr. Mary Lewis, who examined Plaintiff and determined Plaintiff's "[s]tream of mental activity [was] within normal limits" and her thought process was "linear, logical, coherent, and goal directed." (Doc. 10-24 at 69) The treatment notes identified by Plaintiff—including those from Ms. Taylor—do not include any assessments of Plaintiff's limitations that would inform the ALJ in her analysis of the effect of the impairments on Plaintiff's work-related abilities. Thus, Plaintiff fails to demonstrate the records not specifically addressed by the ALJ were significant and probative. *See Houghton v. Comm'r of Soc. Sec. Admin.,* 493 F. App'x 843, 845 (9th Cir. 2012) (rejecting claim that ALJ erred where the claimant failed to show "the ALJ discounted significant probative evidence of functional limitations or work-related restrictions" arising from the conditions).

### 3. Duty to develop the record

Plaintiff argues the ALJ had a duty develop the record and obtain additional evidence related to

her mental impairments. (Doc. 18 at 10)  The law is well-established in the Ninth Circuit that the ALJ has a duty "to fully and fairly develop the record and to assure the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).  However, the law imposes a duty on the ALJ to develop the record in limited circumstances. 20 C.F.R § 416.912(d)-(f) (recognizing a duty on the agency to develop medical history, re-contact medical sources, and arrange a consultative examination if the evidence received is inadequate for a disability determination). Accordingly, the duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *see* 20 C.F.R. § 416.912(e).

There were no conflicts or ambiguities to be resolved, nor did the ALJ find the record was insufficient to make a disability determination regarding Plaintiff's mental impairments. Consequently, the ALJ's duty to develop the record was not triggered. *See Thomas v. Barnhart*, 278 F.3d 947, 948 (9th Cir. 2002) (duty not triggered when the ALJ did not conclude the medical report was inadequate to make a disability determination); *Mayes*, 267 F.3d at 459-60. Because the ALJ did not have a duty to develop the record, Plaintiff's assertion that the ALJ erred by not obtaining additional medical evidence is without merit.

### 4.     Substantial evidence supports the step two determination

The ALJ gave "great weight" to the opinions of Drs. Lewis, Morgan, and Friedland in reaching the conclusion at step two that Plaintiff's "medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas, they are nonsevere."  (Doc. 10-7 at 34, 35)  The opinions of these physicians that Plaintiff's impairments were not severe may be substantial evidence in support of the ALJ's determination.  *See Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (opinions of a physician that "rest[] on independent examination" are substantial evidence, and a non-examining physician's opinion "may constitute substantial evidence when it is consistent with other independent evidence in the record"); *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (when an examining physician provides independent clinical findings, such findings are substantial evidence).

Dr. Lewis performed a consultative psychiatric examination, during which Dr. Lewis evaluated Plaintiff's behavior, thought process, mental activity, perception, intellectual functioning, judgment,

concentration, and memory. (Doc. 10-24 at 68-70) She determined Plaintiff's "[s]tream of mental activity" was "within normal limits;" and her thought process was "linear, logical, coherent, and goal directed." (*Id.* at 69) Dr. Lewis also tested Plaintiff's memory, attention, and concentration. (*Id.* at 70) According to Dr. Lewis, Plaintiff "performed satisfactorily on a gross indicator of rote learning and memory attention encoding and auditory processing by successfully completing forward recall of a digit span." (*Id.*) In addition, Plaintiff was able to recall three identified items after five minutes, and "successfully count by 2s to 20 and back to zero." (*Id.*) Dr. Lewis concluded Plaintiff was "not significantly impaired" in all areas of functioning. (*Id.* at 71-72) Because these opinions were reached following the independent examination, the conclusion of Dr. Lewis is substantial evidence in support of the ALJ's determination that Plaintiff did not have a severe impairment. *See Tonapetyan,* 242 F.3d at 1149; *Orn*, 495 F.3d at 632.

Drs. Morgan and Friedland—non-examining physicians who reviewed Plaintiff's records at the initial level and on reconsideration—determined Plaintiff did not have severe mental impairments. Dr. Morgan opined Plaintiff had no restrictions in her activities of daily living; no difficulties maintaining social functioning; no difficulties maintaining concentration, persistence or pace; and no identified repeated episodes of decompensation. (Doc. 10-12 at 10) After reviewing additional records available after Plaintiff requested reconsideration, Dr. Friedland "adopted" the conclusion that Plaintiff's mental impairments were non-severe. (*Id.* at 22-23) The findings of Drs. Morgan and Frieldand were consistent with the opinion of Dr. Lewis that Plaintiff did not have any significant impairments with mental functioning. Thus, their opinions were substantial evidence in support of the ALJ's determination at step two. *See Tonapetyan,* 242 F.3d at 1149.

Finally, the ALJ's adverse credibility finding—which Plaintiff did not challenge— supports the finding that her mental impairments are not severe. *See Lomas v. Colvin*, 2014 WL 6775762, at *4-5 (C.D. Cal. Dec. 2, 2014) (holding "[t]he ALJ's adverse credibility finding ... further supports the mental nonseverity finding").

**B.    Plaintiff's Physical Impairments and the RFC**

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix

10

2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating a RFC, the ALJ weighs medical and other source opinions, as well as the claimant's credibility. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). Further, the ALJ must consider "all of [a claimant's] medically determinable impairments"—whether severe or not—when assessing a RFC. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

As noted above, the ALJ determined Plaintiff had **"**the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b)." (Doc. 10-7 at 36) Plaintiff contends the ALJ erred in making this finding, because "the ALJ pointed to no evidence from a treating or examining medical professional which supports this assessment." (Doc. 18 at 13) Instead, Plaintiff argues the RFC assessment was "based upon the opinions of non-examining physicians who did not review the complete medical file. (*Id.* at 13-14) Plaintiff notes that after Drs. Bugg and Bobba reviewed the record,

> Plaintiff treated for low back pain with numbness and tingling radiating to the thighs, and physical examination findings persistently included limited range of motion in the spine with pain, positive straight leg raise, positive Farber's tests, nerve tension, tenderness to palpation along the lumbar spine, positive Patrick test bilaterally, positive Reverse Thomas test bilaterally, and reduced strength in the ankles and hips. Ar. 1304, 1436-40, 1604-05, 1610-11, 1647-95, 1697-99. Plaintiff's course of treatment was escalated to include increasing doses of Tramadol and Gabapentin, as well as Norco, injections, and radiofrequency neurolysis. Ar. 1441, 1612, 1647-95, 1672, 1679-83, 1690, 1699-1700. Additionally, a May 2016 MRI of the lumbar spine included highly technical findings of diffuse vertebral marrow hypointense changes of the thoracolumbar spine and sacrum, possible marrow reconversion process. Ar. 1590. There were nonspecific vertebral lesions of T1/T2, possibly compatible with hemangiomas. Ar. 1590. Finally, there were mild disc bulges at L4-L5 and L5-S1 with mild ligamentum flavum and facet hypertrophy at L5-S1. Ar. 1590.

(Doc. 18 at 15-16) Furthermore, Plaintiff notes the ALJ acknowledged in her decision that the findings of Drs. Bugg and Bobba failed to account for all of her impairments, which is why the ALJ reduced the RFC to "light work." (*Id.* at 16, citing AR 206 [Doc. 10-7 at 39])

Notably, the ALJ found Plaintiff's severe impairments included "lumbar spondylosis without myelopathy or radiculopathy." (Doc. 10-7 at 33) However, Drs. Bugg and Bobba were unaware of this diagnosis when they reviewed Plaintiff's medical records in 2015. Instead, the physicians merely noted Plaintiff reported low back pain. (Doc. 10-12 at 9, 22-23) Neither physician reviewed the

results of the MRI, as it was taken in May 2016 after their review. (*See* Doc. 10-32 at 37) As Plaintiff notes, the MRI showed "mild disc bulge at L4-L5 and L5-S1" and "mild ligamentum flavum and facet hypertrophy at L5-S1." (*Id.*) Further, after the physicians' reviews of the record, treatment notes indicated that Plaintiff had a positive straight leg raise test bilaterally, reduced range of motion in her lumbar spine with rotation, and positive nerve tension bilaterally. (*See, e.g.,* Doc. 10-26 at 32; Doc. 10-32 at 51-52) Evidently, the ALJ reviewed these findings and concluded Plaintiff could perform light work without any additional restrictions.

Because no physician reviewed the MRI results or the clinical findings from the examinations after 2015, the ALJ clearly rendered her own medical findings that Plaintiff could perform light work. It is well-settled law that an ALJ may not render her own medical opinion and is not empowered to independently assess clinical findings. *See, e.g., Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (holding an ALJ erred in rejecting physicians' opinions and rendering his own medical opinion); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings"); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (as a lay person, the ALJ is "simply not qualified to interpret raw medical data in functional terms"). "When an ALJ rejects all medical opinions in favor of his own, a finding that the RFC is supported by substantial evidence is less likely." *See Stairs v. Astrue*, 2011 WL 318330, at *12 (E.D. Cal. Feb.1, 2011). For example, this Court determined an ALJ erred where all medical opinions were rejected before the ALJ formulated the RFC. *See Perez v. Comm'r of Soc. Sec.*, 2018 WL 721399 (E.D. Cal. Feb. 6, 2018).

In *Perez*, a physician concluded after a consultative examination that the claimant "had no functional restrictions", and two non-examining physicians opined the claimant "had no severe physical impairments. *Id.*, 2018 WL 721399 at *6. The ALJ "gave no weight" to these opinions, finding the record indicated the claimant had some limitations. *Id.* "After rejecting all the doctor's opinions, the ALJ concluded that Plaintiff would be capable of a reduced range of light work with postural manipulative and environmental restrictions." *Id.* The Court found the ALJ erred, explaining:

> [T]he Court is unable to determine how the ALJ arrived at the conclusion that Plaintiff was capable of light work. Absent adequate explanation of the record, without specific

12

> support from a medical source, and with no testimony from a medical expert, the ALJ appears to have defined his own limitations for Plaintiff. The Court finds that this was error. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (the ALJ was not qualified as a medical expert and therefore could not permissibly go outside the record to consult medical textbooks for purpose of making his own assessment of the claimant's physical condition); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person,... the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

*Id.,* 2018 WL 721399 at *7-8. Without the support of a physician's opinion, the Court concluded the RFC lacked the support of substantial evidence. *Id.* at *8.

Significantly, the RFC finding in *Perez* informs this case. The ALJ gave only "partial weight" to the opinions of Drs. Bugg and Bobba, explaining she gave a more restrictive RFC "in consideration of the claimant's lupus and back impairment." (Doc. 10-7 at 39) However, the Court is unable to determine why the ALJ believed a restriction to a full range of light work was appropriate to address Plaintiff's severe physical impairments. Without medical opinions to support the ALJ's conclusions, the RFC lacks the support of substantial evidence. *See Perez,* 2018 WL 721399 at *7-8; *Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991) (holding "the ALJ's conclusions are not supported by substantial evidence" if an RFC is formulated without the findings of a physician). Thus, the ALJ erred in evaluating the record and assessing Plaintiff's RFC.

**C.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v*, 80 F.3d at 1292. In addition, an award of benefits is directed where no useful purpose would

be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Here, the RFC articulated by the ALJ lacks the support of substantial evidence in the record, and the matter should be remanded for further consideration. *See Tackett*, 180 F.3d at 1102-03 (remanding the matter to the Social Security Administration for reconsideration after finding the ALJ erred by offering his own medical conclusion, which was not supported by any medical evidence); *Perez*, 958 F.2d at 446 (finding that where the ALJ offered any opinion "without any assessment of residual functional capacity by a physician, …it is necessary to remand for the taking of further functional evidence").

## CONCLUSION AND ORDER

For the reasons set forth above, the Court finds the ALJ erred in her evaluation of Plaintiff's RFC and failed to apply the correct legal standards. Consequently, the ALJ's decision cannot be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Mandy Guzman, and against Defendant, the Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **September 18, 2020**          **/s/ Jennifer L. Thurston**
                                           UNITED STATES MAGISTRATE JUDGE